## CIRCUIT COURT OF FAIRFAX COUNTY

Little Professor Book Co.
of Reston, Va., Inc., et al.

v.

Reston North Point Village
Limited Partnership et al.

September 27, 1996

Case No. (Law) 151199

BY JUDGE GERALD BRUCE LEE

This matter is before the Court upon Reston North Point Village Limited Partnership's, the Lerner Corporation's, Peter Henry's and John Henry's ("Defendants") Plea in Bar and Demurrer to Little Professor Book Company of Reston, Virginia, Inc.'s, James Holsinger's and Marilyn Holsinger's ("Plaintiffs") Amended Motion for Judgment. This suit arises out of a lease dispute between the Plaintiffs and Defendants. Plaintiffs and Defendants entered into a commercial lease for property located at Reston North Point Village Shopping Center in Reston, Virginia. Plaintiffs contend that Defendants fraudulently induced them into entering into the lease by purposefully underestimating the common area maintenance charges and real estate taxes for the premises. The issues presented to the Court are as follows:

(1) Whether Plaintiffs' fraud claims are barred by a settlement agreement entered into by the parties in prior litigation;

(2) Whether Plaintiffs' Amended Motion for Judgment states a claim for fraud based upon alleged misrepresentations made by Defendants;

(3) Whether Virginia recognizes an exception to the intracorporate conspiracy doctrine which will allow a principal and agent to conspire to injure

a business or trade within Virginia Code §§ 18.2-499 to 18.2-500 and to tortiously interfere with a contract.

Having considered the authorities and arguments of counsel, the Court holds that Defendants' Plea in Bar is sustained, Defendants' Demurer is sustained, and Plaintiffs' Amended Motion for Judgment will be dismissed.

### *Facts*

This suit arises out of a lease dispute between Little Professor Book Company and Reston North Point Village Limited Partnership. Reston North Point Village Limited Partnership and Little Professor Book Company of Reston entered into a lease for commercial property located at Reston North Point Village Shopping Center. Little Professor Book Company is owned and operated by James and Marilyn Holsinger. Peter Henry and John Henry are employees of Reston North Point Village Limited Partnership and Lerner Corporation. The Holsingers signed the lease in their personal capacity as guarantors of Little Professor's obligations under the lease. Lerner Corporation manages Reston North Point Village Shopping Center as agent for Reston North Point Village Limited Partnership ("RNPVLP").

The dispute centers around the estimated common area maintenance charges ("CAM") and real estate taxes. Under the lease, the parties agreed that RNPVLP would collect the estimated CAM charges and real estate taxes for the first year of the tenancy on a monthly basis. Each subsequent year, the parties agreed that RNPVLP would adjust the CAM charges and real estate taxes collected based on the CAM charges and real estate taxes incurred during the prior year. Prior to the execution of the lease, the Holsingers asked Defendants whether the estimates for the CAM charges and real estate taxes contained in the lease were reasonable. The Holsingers expressed concern that the estimates were above market and unusually high for the marketplace. In response to the Holsingers' inquiry, Defendants assured the Holsingers that the estimates of the CAM and real estate taxes were reliable and accurate. Defendants further assured Plaintiffs that they should not expect to pay any more for the CAM charges and real estate taxes than the estimated figures contained in the lease. Plaintiffs allege that Defendants fraudulently provided the Holsingers with artificially low estimates for the CAM charges and real estate taxes to induce the Holsingers to execute the lease.

## I. *Plea in Bar*

Little Professor Book Company of Reston previously filed a Bill of Complaint ("Lawsuit I") against Reston North Point Village Limited Partnership, John Henry, Peter Henry, and Capstone Realty. In Lawsuit I, Little Professor alleged that Defendants defrauded Little Professor by falsely representing to the Holsingers that Reston North Point Village Shopping Center would be the last shopping center built in Reston. Lawsuit I alleged two counts: Count I, Constructive Fraud, and Count II, Actual Fraud. On the second day of trial, the parties settled the case. The parties executed an agreement ("Settlement Agreement") which represents the terms of their agreement. Defendants argue that the Settlement Agreement executed between the parties in connection with prior litigation, Lawsuit I, bars Plaintiffs from asserting its fraud claims in the present action. In response, Plaintiffs contend that the Settlement Agreement was not a "global settlement agreement" and that the Settlement Agreement creates an exception with respect to claims arising from trash collection.

The Court holds that the Settlement Agreement entered into on December 21, 1994, precludes Plaintiff from asserting fraud claims in its Amended Motion for Judgment. In Lawsuit I, Plaintiffs allege that Defendants fraudulently induced Plaintiffs into entering a lease by misrepresenting to Plaintiffs that North Point would be the last shopping center constructed in Reston, Virginia. In the present action, Plaintiffs allege in their Amended Motion for Judgment that Defendants fraudulently induced them into entering into a lease by misrepresenting the estimates of the CAM costs and real estate taxes.

The issue presented to the Court is whether the Settlement Agreement entered into on the second day of trial in Lawsuit I bars Plaintiffs from asserting their fraud claims in the present action. The Court holds that the Settlement Agreement bars Plaintiffs from pursuing their fraud claims. The Settlement Agreement states in part:

> James Holsinger and Marilyn Holsinger,[1] their heirs, successors, and assigns do hereby release RNPVLP, its predecessors, successors, partners, employees, agents, and assigns, Capstone, its predecessors, successors, officers, employees, agents, and assigns, John Henry and Peter Henry, from any and all liability, claims, damages, actions

---

[1] In Paragraph 11 of the Settlement Agreement, Little Professor releases Defendants from liability by the same language found in Paragraph 12.

and/or causes of action, whether currently existing or not, and whether known or unknown, relating to or arising from the claims and allegations made and/or set forth in the Lawsuit.

Settlement Agreement, ¶ 12. The Settlement Agreement further states:

RNPVLP, its partners, successors, and assigns do hereby release Little Professor, its successors, shareholders, officers, employees, and agents, James Holsinger and Marilyn Holsinger, from any and all liability, claims, damages, actions, or causes of action relating to any presently existing claims RNPVLP may have against Little Professor, its officers, agents and employees, James Holsinger and/or Marilyn Holsinger, except for the payment by Little Professor for trash service at the North Point Village Center.

Settlement Agreement, ¶ 13.

In Paragraphs 11 and 12 of the Settlement Agreement, Plaintiffs release Defendants from any and all claims currently existing or unknown relating to claims arising from Lawsuit I. In Paragraph 13, Defendant RNPVLP releases Plaintiffs from any and all claims except for the payment by Plaintiff Little Professor for trash service. In Lawsuit I, Plaintiffs allege that Defendants fraudulently induced Plaintiffs into executing the lease by misrepresenting that North Point was the last shopping center to be built in Reston. The present action alleges fraudulent inducement relating to the same lease but on a different theory, Defendants' misrepresentation of CAM and real estate charges. The language of the Settlement Agreement releases Defendants from liability with respect to fraudulent inducement to enter into the lease. Although Plaintiffs have alleged different factual theories, Paragraphs 11 and 12 clearly release RNPVLP from all liability with respect to fraudulent inducement to enter the lease.

The Court finds that Paragraph 13 of the Settlement Agreement does not carve out an exception with respect to "trash collection" in favor of Plaintiffs. Paragraph 13 reflects that Defendant RNPVLP releases Plaintiffs from any liability except for trash services. The language in the Settlement Agreement does not reflect RNPVLP's liability to Plaintiffs with respect to trash collection. Paragraphs 11 and 12 of the Settlement Agreement govern RNPVLP's liability with respect to the Plaintiffs. Accordingly, Defendants' Plea in Bar to Counts I and II of Plaintiffs' Amended Motion for Judgment is sustained.

## II. *Demurrer*

A demurrer challenges the legal sufficiency of factual allegations in order to determine whether the motion for judgment states a cause of action upon which relief can be granted. *Fun v. Virginia Military Institute*, 245 Va. 249, 427 S.E.2d 181 (1993); Va. Code § 8.01-273 (1992). A demurrer admits the truth of all facts properly pleaded and inferences properly drawn from the facts alleged. *Rosillo v. Winters*, 235 Va. 268, 270, 367 S.E.2d 717, (1988). The facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged. *Id*. The Supreme Court of Virginia has cautioned trial courts against incorrectly short circuiting litigation at the pretrial stage without permitting the parties to reach trial on the merits. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993).

### A. *Fraud Claims*

In order to properly allege a fraud claim, the Plaintiffs must allege: (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *Bryant v. Peckinpaugh*, 241 Va. 172, 175 (1991).[2] The Court holds that Defendants' Demurrer to Count I and Count II of Plaintiffs' Amended Motion for Judgment is sustained.

The Court holds that Plaintiffs' fraud claims fail because Plaintiffs have failed to allege misrepresentations of material fact. Plaintiffs allege that Defendants misrepresented the estimates of the CAM charges and real estate taxes. (See AMJ ¶ 14, 15, 16.) Defendants' alleged misrepresentations, however, fail to amount to more than statements of opinion. *Poe v. Voss*, 196 Va. 821 (1955). The Supreme Court in *Poe v. Voss* opined "What is susceptible of exact knowledge when the statement is made is usually considered as a matter of fact." *Id*. at 826. The estimates[3] that Defendants

---

[2] The elements of constructive fraud are as follows: (1) a false representation, (2) of material fact, (3) made innocently or unknowingly, (4) reliance by the party misled, and (5) resulting damage to the party misled. *See Nationwide Mutual Ins. Co. v. Hargraves*, 242 Va. 88, 92 (1991). The Court sustains Defendants' Demurrer to Count II (Constructive Fraud) of Plaintiffs' Amended Motion for Judgment for the same reasons it sustains Defendants' Demurrer to Plaintiffs' actual fraud claim.

[3] Webster's Dictionary defines estimate as follows: (1) an opinion or judgment of the nature, character, or quality of a person or thing; (2) a rough or approximate calculation. Webster's Ninth New Collegiate Dictionary 426 (9th ed. 1989).

provided Plaintiffs with respect to the CAM charges and real estate taxes are merely "estimates" or "approximations" and were not susceptible of exact knowledge when they were provided to Plaintiffs. The word "estimate" means an approximation. The lease executed between the parties provides that future adjustments will be made based upon actual costs. Defendants' statements that the estimates are accurate is akin to the defendant's statement in *Watson v. Avon Street Business Center*, 226 Va. 614, 311 S.E.2d 795 (1984), that the roof was a "25 year roof" and "a good roof." The Court in *Watson* held that these statements were expressions of opinion and seller's talk insufficient to frame a jury issue for deceit. *Id*. The Court holds therefore that Defendants' Demurrer to Count I (Actual Fraud) and Count II (Constructive Fraud) is sustained.

Additionally, the Court holds that Plaintiffs' fraud claims fail because Plaintiffs have failed to sufficiently allege reasonable reliance. Defendants contend that Plaintiffs' inquiries regarding the reasonableness of the CAM charges and real estate taxes put them on notice for a possible misrepresentation and that Plaintiffs could not have relied upon the alleged misrepresentations. In response, Plaintiffs argue that Defendants were among the only persons capable of calculating and estimating the CAM charges and real estate taxes. *See* AMJ ¶ 17. Plaintiffs also state that they did not have access to calculate the charges and taxes themselves. *See* AMJ ¶ 18.

The general rule espoused in *Poe v. Voss* is that if a purchaser is given or secures information as to the condition of property that would make a reasonable man suspicious, he is under a duty to ascertain the true condition for himself and cannot rely upon the representations of the vendors. *See Poe v. Voss*, 196 Va. 821 (1955). The exception, however, is that the vendor must not say or do anything to throw the purchaser off his guard or to divert him from making the inquiries and examination which a prudent man ought to make. Plaintiffs alleged that they made inquiries with respect to the CAM charges and real estate taxes and that Defendants made representations in response to their inquiries.

The Court holds that Plaintiffs have failed to allege that they reasonably relied on Defendants' misrepresentations with respect to the CAM charges and real estate taxes. The figures provided in the lease with respect to the CAM charges and real estate taxes were estimates. The lease provided that the Plaintiffs would be charged for the actual amounts. The Court holds that Plaintiffs could not have reasonably relied upon the fact that Defendants' estimates would in fact be lower or the same as the actual costs.

## B. *Business Conspiracy*

Defendants contend that a conspiracy between Defendant RNPVLP and Defendant Lerner is a legal impossiblity because the Plaintiffs have alleged an agency relationship between Lerner and RNPVLP. *See* AMJ ¶ 3; *Charles E. Brauer Co. v. NationsBank of Va.*, 251 Va. 28, 466 S.E.2d 382 (1996). In response, the Plaintiffs argue that they have alleged an exception to the intracorporate conspiracy doctrine. *Greenville Publishing Co. v. Daily Reflector*, 496 F.2d 391 (4th Cir. 1974). The Court holds that the Plaintiffs' business conspiracy claim fails for several reasons.

First, a business conspiracy may not exist between RNPVLP and Lerner as a matter of law. In order to properly allege a claim for business conspiracy, the plaintiff must allege that: (1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business, and (2) resulting damage to plaintiff. Va. Code § 18.2-499 (1996); *ssee also* Va. Code § 18.2-500 (1996); *Allen Realty Corp. v. Holbert*, 227 Va. 441, 318 S.E.2d 592 (1984). The Court holds that Plaintiffs have failed to sufficiently allege that Defendants "conspired or combined" to injure Plaintiffs' business. Plaintiffs allege that Lerner is an agent of RNPVLP. *See* AMJ ¶ 3. The Supreme Court of Virginia held in *Fox v. Deese*, 234 Va. 412, 362 S.E.2d 699 (1987), that an agent cannot conspire with its principal. *Id.* at 428. The Supreme Court of Virginia opined that "by definition, a single entity cannot conspire with itself." *Id.*

Second, the Court holds that the exception to the intracorporate conspiracy doctrine carved out in *Greenville Publishing Co. v. Daily Reflector, Inc.*, 496 F.2d 391 (4th Cir. 1974), which addressed violations of the Sherman Act[4] has not been adopted by the Virginia Supreme Court and therefore does not apply to the instant action. In *Greenville*, the Fourth Circuit opined that an exception to the intracorporate conspiracy doctrine exists when the directors and officers of a corporation can be shown to have an independent personal stake in achieving a corporation's illegal objective. *Id.* at 399. Another Fourth Circuit decision which addresses the exception to the intracorporate conspiracy doctrine is *Oksanen v. Paige Memorial Hospital*, 945 F.2d 696 (4th Cir. 1991). The *Oksanen* court criticized the intracorporate exception created in

---

[4] The Eastern District in *Levine v. McLeskey*, 881 F. Supp. 1059 (E.D. Va. 1995), opined that where the directors and officers of a corporation can be shown to have a personal stake in achieving a corporation's illegal objective, they can be treated as separate entities for conspiracy purposes. *Citing Selman v. American Sports Underwriter, Inc.*, 697 F. Supp. 225, 239 (W.D. Va. 1988).

*Greenville* and opined that "the exception threatened to swallow the rule." *Id.* at 705.

Third, the Supreme Court of Virginia in *Charles E. Brauer Co. v. NationsBank of Va.*, 466 S.E.2d 382 (1996), recently reaffirmed the general rule in Virginia that a conspiracy between a principal and an agent is a legal impossibility because a principal and an agent are not separate persons for purposes of the conspiracy statute. *Brauer*, however, is silent on whether or not Virginia recognizes the exception to the intracorporate conspiracy doctrine articulated in *Greenville*.

Finally, the Court is not bound by a prior ruling of this Court on this same issue raised on a Plea in Bar to Plaintiffs' Motion for Judgment.[5] Accordingly, the Defendants' Demurrer to Count III (Business Conspiracy) is sustained.

## C. *Conspiracy/Tortious Interference*

In order to allege a claim for tortious interference with contracts, the plaintiff must allege: (1) the existence of a valid contractual relationship or business; (2) intentional interference inducing or causing a breach or termination of the relationship or expectancy; (3) damage resulting to the party claiming disruption of the relationship or expectancy. *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985).

The Court holds that Count IV (Conspiracy/Tortious Interference) of Plaintiffs' Amended Motion for Judgment fails because a person or entity cannot intentionally interfere with its own contract. *See Fox v. Deese*, 234 Va. 412, 362 S.E.2d 699 (1987). Plaintiffs have alleged in Paragraph 3 of their Amended Motion for Judgment that Lerner is an agent of RNPVLP. Thus, RNPVLP and Lerner are the same entity for purposes of this demurrer. Therefore, Plaintiffs have failed to state a claim upon which relief can be granted because the Virginia Supreme Court has not recognized an exception to the intracorporate conspiracy doctrine. Accordingly, for the reasons stated

---

[5] The Supreme Court of Virginia refuted "the law of the case" argument in *Turner v. Wexler*, 244 Va. 124, 418 S.E.2d 886 (1992). The Court held: "A trial court is empowered to change a legal determination as long as it retains jurisdiction over the proceedings before it." The Court further opined: "Here, there is no question that the trial court retained jurisdiction over Turner's action and, hence, the court, albeit with a different judge presiding, had the power to change its earlier determination." The trial court retains jurisdiction over an action until a final order is entered and the action is no longer within the breast of the court. Accordingly, the Court on Defendants' Demurrer to Plaintiffs' Amended Motion for Judgment may rule inconsistently with the ruling of a different judge in the same court to Defendants' Plea in Bar to Plaintiffs' Motion for Judgment.

previously with respect to Plaintiffs' business conspiracy claim, Defendants' Demurrer to Count IV (Conspiracy/Tortious Interference) is sustained.

## III. *Conclusion*

The Court sustains Defendants' Plea in Bar and Demurrer.[6] The Plaintiffs' fraud claims are barred in their entirety by the settlement agreement entered into by the parties in prior litigation. Additionally, Plaintiffs' fraud claims are dismissed because Plaintiffs have failed to allege misrepresentations of fact. Plaintiffs' business conspiracy claim and conspiracy/tortious interference claim are dismissed without leave to amend. Virginia has not recognized the exception to the intracorporate conspiracy doctrine, and the allegations of a conspiracy between principal and agent fail to state a cause of action. The Court is mindful that a demurrer, unlike a motion for summary judgment, does not allow the court to evaluate and decide the merits of a claim. A demurrer only tests the legal sufficiency of well-pleaded factual allegations to determine if the motion for judgment states a cause of action. In the interest of both judicial economy and preservation of the parties' resources, the Court does not think it is prudent to test whether the Virginia Supreme Court recognizes an exception to the intracorporate conspiracy doctrine by a trial on the merits. The Court finds that it is within the purview of the appellate courts to decide this issue. Accordingly, Defendants' Plea in Bar and Demurrer are sustained.

---

[6] The Court's determination of Defendants' Demurrer with respect to the Plaintiffs' punitive damage claims and request for attorneys' fees is rendered moot by the determination of Defendants' Plea in Bar and Demurrer to Plaintiffs' fraud claims, business conspiracy claim, and tortious/interference claim.