# CIRCUIT COURT OF THE CITY OF ROANOKE

Kevin E. Wilson

v.

State Farm
Fire and Casualty Co.

July 14, 2010

Case No. CL06-2308

BY JUDGE CHARLES N. DORSEY

In December 2009, a jury found that Kevin E. Wilson, Esq., the plaintiff here, was entitled to recover for fire damage to a rental property under a rental-dwelling policy issued by State Farm Fire and Casualty Company, the defendant. The question before the Court is whether he is entitled to recover 50 or 100 percent of the loss. The Court concludes that because his interest in the property was 50 percent, at the time of the fire, he is entitled to recover only that percentage of the loss after his $1,000 deductible is applied or $31,326.60.

## I. Background

This case arose from State Farm's denial of Wilson's fire-loss claim in May 2006. In its denial-of-coverage letter, State Farm stated three grounds for denying the claim: (1) Wilson intentionally caused the fire to be set; (2) he failed to cooperate in the investigation of the loss; and (3) he engaged in concealment and misrepresentation of material facts relating to the loss.

In response to the denial of his claim, Wilson brought this suit, alleging not only that State Farm breached the policy but also that it did so in bad faith. Before trial, State Farm moved to bifurcate Wilson's two claims. That motion was granted, and the breach claim was tried to a jury in December 2009. On a special verdict form, the jury found that State Farm failed to prove its defenses of fraud, misrepresentation, and concealment, and that therefore Wilson was entitled to recover under the policy.

Prior to trial, Wilson and State Farm stipulated that the "actual loss and damage to the property ... as a result of [the] fire loss is $63,653.20." Joint Stipulations of Fact ¶ 6(d) [hereinafter J.S.]. But now they disagree over whether Wilson is entitled to recover 50 or 100 percent of that amount. After hearing argument and testimony on April 8, 2010, the Court took the question under advisement and gave both sides an opportunity to file supplemental briefs.

## II. Discussion

### A. *Insurable Interest*

The Conditions Section of the policy State Farm issued to Wilson contains the following provision:

> 1. *Insurable Interest and Limit of Liability.* Even if more than one person has an insurable interest in the property covered, we shall not be liable:
>> a. to the insured for an amount greater than the insured's interest.

Pl's Ex. 1, 7.

According to this provision, State Farm's liability for the fire loss is limited to Wilson's interest in the property. As the policyholder, Wilson has "the burden ... to bring himself within the policy." *Maryland Cas. Co. v. Cole*, 156 Va. 707, 716, 158 S.E. 873, 876 (1931) (citing *General Accident Corp. v. Murray*, 120 Va. 115, 126, 90 S.E. 620, 624 (1916)). This means that he must not only prove that he had an interest in the property at the time of the fire, but must *also* prove the extent of that interest.

The parties do not disagree that Wilson had an interest in the property at the time of the fire. They do, however, disagree on the size of

that interest. State Farm maintains that Wilson only had a 50 percent interest in the property. Wilson's own statements support this claim. Before trial, he stipulated: "By virtue of his 50% interest in W&G investment Group, L.L.C., Kevin Wilson had an insurable interest in [the property]." J.S. ¶ 2. And then at trial, when asked whether his interest in the property was 50 percent, he answered unequivocally, "Yes." Trial Tr. vol. 2, 79, Dec. 16, 2009.

Notwithstanding these statements, Wilson now argues that he had a 100 percent interest in the property because "either prior to or shortly after the August 2, 2005, fire, W&G was dissolved," and he was given back the property as part of the company's accounting and distribution. Pl's Br. 2 (citing Hr'g Tr. 16-17, April 8, 2010). His prior statements, however, belie this contention. As State Farm points out, he testified at trial that W&G had "evolved" at the time of the fire,[1] that it "continued to make money" after the fire,[2] and that it even purchased properties after the fire. Trial Tr. vol. 3, 17, Dec. 19, 2009.

Moreover, at the April 8 hearing, Wilson made inconsistent statements concerning the timing of W&G's dissolution. For instance, when asked on direct examination whether he recalled when the company was dissolved, he answered, "I believe it was before the fire." Hr'g Tr. 16. When pressed on cross-examination, however, Wilson admitted that he did not know for certain when the company was dissolved:

> Q: So W&G was in existence at the time of this fire and W&G owned this property and you were 50 percent owner of W&G.
>
> A: I don't know for sure whether we had completed the dissolution of W&G before the fire or after the fire. So sitting here today I cannot definitively answer that question for you.

*Id.* at 28.

And when asked whether he had any documentation that showed when the company was dissolved, Wilson came up empty-handed:

---

[1] Trial Tr. vol. 2, 132.

[2] *Id.* at 133.

Q: When you dissolved this LLC were there any documents generated?

A: We sent documents to the IRS.

Q: Well, where are they? Where is the document that says W&G was dissolved prior to this fire?

A: Perhaps I have them somewhere at home.

*Id.* at 28-29.

Finally, when the Court asked Wilson's counsel at the April 8 hearing whether there is a deed to the property from W&G back to Wilson, counsel answered: "Your Honor, sitting here today I can't represent that there is or isn't." *Id.* at 32. The truth is, there was not. In fact, W&G did not deed the property back to Wilson until April 20, 2010, twelve days *after* the April 8 hearing. Def.'s Reply. Br. Attach. 4. This fact cuts sharply against Wilson's claim that he was given back the property in 2005 as part of W&G's dissolution, for it is hard to believe that he would have waited almost *five years* before having the company deed the property back to him.

In light of his myriad inconsistent statements, which are all the more difficult to understand because he is a lawyer, not a layman, and the total lack of any documentation supporting that he was given back the property in 2005 as part of W&G's dissolution, the Court finds that Wilson has failed to carry his burden of proving that he had more than a 50 percent interest in the property at the time of the fire. Accordingly, the Court concludes that, as he stipulated before trial and testified at trial, his interest in the property at the time of the fire was 50 percent. This means that his recovery is limited to that percentage of the fire loss unless the doctrines of waiver and estoppel, discussed below, bar State Farm from relying on the Conditions Section.

B. *Estoppel and Waiver*

In a last-ditch attempt to recover 100 percent of the loss, Wilson argues that "State Farm is either estopped from asserting or has waived its position that [he] is [not] entitled to the full amount of his fire claim under his policy." Pl's Br. 6. He advances this argument on two grounds: (1) State

Farm calculated the policy premiums based on 100 percent of the value of the property; and (2) seven months after the fire, it paid him 100 percent of a water-loss claim under the policy. *Id.* at 4-5.

### 1. *Estoppel*

"The elements necessary to establish equitable estoppel are (1) a representation, (2) reliance, (3) change of position, and (4) detriment, and the party who relies upon estoppel must prove each element by clear, precise, and unequivocal evidence." *Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust*, 243 Va. 53, 59, 413 S.E.2d 599, 603 (1992) (citations omitted). "Because the doctrine of estoppel prevents the showing of the truth," the Supreme Court of Virginia has repeatedly stressed that it is to be "applied rarely and only from necessity." *Id.*, 413 S.E.2d at 603 (citations omitted).

Wilson contends that he "detrimentally relied upon State Farm's charging of full-value premiums and its payment of the full value of the water damage claim by not taking any steps to change his coverage or to obtain additional insurance on the 50% of the house State Farm later decided it did not cover, among other ways." Pl's Br. 6, n. 4. The evidence, however, does not support this assertion. To begin with, Wilson has offered no evidence demonstrating that State Farm did in fact calculate his premiums based on 100 percent of the value of the property, as opposed to his 50 percent interest in W&G.

Next, Wilson testified at the April 8 hearing that he did not change his position based on State Farm's paying him 100 percent of the water-loss claim:

Q: Mr. Wilson, when you were paid the $431 on the water loss claim, did you rely upon that in any way?

A: I don't really understand what you mean.

Q: Did you change your position with respect to the fire loss claim in any way because you were paid the $431 on the water loss claim?

A: I'm still not clear what you're asking me, did I change my position.

Q: Did you approach the fire claim any differently because you'd been paid $431 on the water claim?

A: If I'm understanding what you're asking me, no.

Hr'g Tr. 20.

What is more, even if Wilson did rely on State Farm's paying him 100 percent of the water-loss claim, he could not have changed his coverage to cover more than 50 percent of the fire loss, anyway. This is because the fire occurred seven months *before* he received payment for the water-loss claim; thus any change in coverage made at that time would have only applied to future, not past losses.

Finally, there is no evidence that Llewellyn Thompson, the State Farm agent who issued the policy, represented to Wilson that he would be entitled to recover 100 percent of any loss to the property even though W&G held the deed. After all, such a representation would have been contrary to the plain language of the Conditions Section, which, as noted above, provides that State Farm is not liable "to the insured for an amount greater than the insured's interest." Pl's Ex. 1, 7. Moreover, even if Thompson had made such a representation, there is no credible evidence that Wilson relied on it and changed his position to his detriment by not taking steps to acquire additional coverage on the property.

Accordingly, the Court finds that Wilson has failed to meet his burden of proving the necessary elements to establish estoppel by "clear, precise, and unequivocal evidence." The Court thus sees no reason for applying the doctrine to preclude State Farm from relying on the Conditions Section.

### 2. *Waiver*

"Waiver," as the Supreme Court of Virginia has explained, "is the voluntary, intentional abandonment of a known legal right, advantage, or privilege." *Cowan v. Psychiatric Assocs.*, 239 Va. 59, 62, 387 S.E.2d 747, 749 (1990) (quoting *Fox v. Deese*, 234 Va. 412, 425, 362 S.E.2d 699, 707 (1987)). "Essential elements of the doctrine include both knowledge of the facts basic to the exercise of the right and the intent to relinquish the right." *Baumann v. Capozio*, 269 Va. 356, 360, 611 S.E.2d 597, 599 (2005) (citing *Fox*, 234 Va. at 425, 362 S.E.2d at 707). The party relying on a waiver must prove these elements by clear and convincing evidence. *Virginia Polytech. Inst. v. Interactive Return Serv.*, 267 Va. 642, 652, 595

S.E.2d 1, 6 (2004) (citing *Utica Mut. Ins. v. National Indem. Co.*, 210 Va. 769, 773, 173 S.E.2d 855, 858 (1970)).

Although Wilson makes much of the fact that State Farm paid him 100 percent of his water-loss claim seven months after the fire, there is no credible evidence that it did so with full knowledge of his 50 percent interest in the property *and* with the intent to relinquish its right to rely on the Conditions Section. In fact, as State Farm points out, Wilson does not remember telling the State Farm adjuster who handled the water-loss claim about his less-than-100-percent interest in the property:

> Q: Okay. In the water loss claim, you worked primarily with a State Farm employee by the name of Mark Brungard, right?

> A: I remember the name Brungard.

> Q: Did you ever tell him that you were not the full owner of the [property]?

> A: I don't recall telling him that, no.

Hr'g Tr. 20.

Nevertheless, Wilson argues that State Farm had knowledge of his 50 percent interest in the property because Thompson "knew about W&G and its business, and was fully aware that these properties were purchased in individual names and transferred to W&G." Pl's Br. 5-6. But other than Wilson's own testimony, which has been shown to contain numerous inconsistencies,[3] there is no evidence that Thompson (or, for that matter, any other State Farm agent) knew that the property had been deeded to W&G. Indeed, as State Farm notes, in his Sworn Statement of Proof of Loss for the fire-loss claim, Wilson stated that he was the "owner" of the property, not W&G. Further, even if State Farm knew that Wilson had deeded the property to W&G, there is no evidence, much less clear and convincing evidence, that it paid the water-loss claim with the intent to relinquish its right to rely on the Conditions Section.

Consequently, without credible evidence that State Farm both knew of Wilson's 50 percent interest in the property *and* intended to relinquish

---

[3] See *supra* Part II.A.

its right to rely on the Conditions Section when it paid the water-loss claim, Wilson has failed to meet his burden of proving the elements of waiver by clear and convincing evidence. The Court therefore finds no basis for applying the doctrine to bar State Farm from relying on the Conditions Section.

## III. Conclusion

Because Wilson had a 50 percent interest in the property at the time of the fire and because he has failed to prove the necessary elements of the doctrines of estoppel and waiver, the Court concludes that he is only entitled to that percentage of the fire loss after his $1,000 deductible is applied, or $31,326.60, under the Conditions Section.