## CIRCUIT COURT OF FAIRFAX COUNTY

Robin A. Tomlin et al.

v.

International Business
Machines Corp. et al.

February 13, 2012

Case No. CL-2011-8763

By Judge Robert J. Smith

This matter comes before the Court on the Demurrers filed by Defendants International Business Machines Corporation ("IBM"), Albert Leung, Walt Sirene, Clement Quintyne, Corinne Minton-Package, and Kevin Quinn.

*Background*

Three former IBM employees, Robin A. Tomlin ("Ms. Tomlin"), Russell L. Tomlin ("Mr. Tomlin"), and James T. Williams, filed a five-count

Complaint against IBM and five individual defendants seeking declaratory relief (Count I), alleging defamation and defamation *per se* (Count II), tortious interference with business expectancy (Count III), common law conspiracy (Count IV), and negligent retention of employees (Count V).

Plaintiff Russell Tomlin is the brother of Plaintiff Robin Tomlin. All three Plaintiffs were discharged from their employment at the Herndon, Virginia, IBM office on October 28, 2010, following an investigation by IBM's internal audit department. An anonymous letter sent to IBM, alleging that Ms. Tomlin had acted unethically by hiring her cousin and her brother, prompted the investigation.

Upon being discharged from their respective positions with IBM, Ms. Tomlin learned that IBM's internal investigation had concluded that she had violated IBM policy when she hired a relative and set his salary. Mr. Tomlin was informed he was being terminated based on a "discrepancy in his on-line application." (Complaint, ¶ 167.) Mr. Williams was told the grounds for his termination was that he had fraudulently filled out a form pertaining to the hiring of Mr. Tomlin. (Complaint, ¶ 170.)

## Standard of Review

A demurrer tests whether the plaintiff's pleading states a cause of action upon which relief can be granted. Va. Code Ann. § 8.01-273(A). The sole question to be decided by the court is whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against the defendant. *Thompson v. Skate Am., Inc.*, 261 Va. 121, 128, 540 S.E.2d 123 (2001). A demurrer admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts. *Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652 (1991). A demurrer does not admit the correctness of any conclusions of law. *Ward's Equip., Inc. v. New Holland North America, Inc.*, 254 Va. 379, 382, 493 S.E.2d 516 (1997). Where the pleading lacks sufficient definiteness to enable the court to find a legal basis for its judgment, the demurrer must be sustained. *Mark Five Constr., Inc. v. Castle Contractors*, 274 Va. 283, 287-88, 645 S.E.2d 475 (2007).

## Analysis

### A. Defendant International Business Machines Corporation

#### 1. Demurrer to Count I: Declaratory Relief

Count I of Plaintiffs' Complaint seeks a declaration from the Court that Ms. Tomlin's non-compete agreement ("the Agreement") is unenforceable.

Defendant IBM demurs to Count I on the grounds that Plaintiffs have failed to state a claim for declaratory judgment because there is no actual controversy to be adjudicated by the Court.

Virginia's Declaratory Judgment Act, codified at Virginia Code § 8.01-184, provides:

> In cases of actual controversy, circuit courts within the scope of their respective jurisdictions shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed and no action or proceeding shall be open to objection on the ground that a judgment order or decree merely declaratory of right is prayed for.

The Act requires there be an actual controversy existing between the parties before a petition for declaratory relief may be heard. The Virginia Supreme Court has held that the alleged controversy must be "justiciable, that is, where specific adverse claims, based on present rather than future or speculative facts, are ripe for judicial adjustment." *City of Fairfax v. Shanklin*, 205 Va. 227, 229, 135 S.E.2d 773 (1964).

IBM's contention that there is no actual controversy either pleaded or reasonably inferable from the Complaint is based on its assertion that Ms. Tomlin does not plead anywhere in the Complaint either breach of the Agreement or her intent to breach the Agreement. Plaintiffs reply that the Complaint specifically pleads that Ms. Tomlin's current efforts to conduct her trade and profession are in conflict with the stated limitations of the Agreement, thus creating an actual controversy for purposes of their claim for declaratory judgment.

In *Graves v. Ciraden, Inc.*, 65 Va. Cir. 127 (Fairfax 2004), Judge Thacher of this Court addressed the issue of whether the Complainant's stated desire to practice in the area restricted by a non-compete agreement was enough to create an actual controversy that would allow the Court to hear the merits of the Bill of Complaint for a Declaratory Judgment. In overruling the demurrer, Judge Thacher held that the Complainant did have standing to challenge the non-compete agreement at issue because an actual controversy existed.

Judge Thacher was guided in *Graves* by the Virginia Supreme Court's opinion in *Yukon Pocahontas Coal Co. v. Ratliff*, 175 Va. 366, 368-69, 8 S.E.2d 303 (1940), which provides: "The effect of the demurrers was to admit as true all facts well pleaded in the bill. If the admitted facts disclosed an `actual controversy' or an `actual antagonistic assertion or denial of right,' then the appellants were entitled to have the court make a binding adjudication of right."

The Complainant in *Graves* had pleaded that he wished to compete within the restricted area in contravention of the non-compete agreement

and alleged that said agreement was overbroad and unenforceable. The Court held that, by implication, the Respondent had shown an unwillingness to release the Complainant from the restrictions of the agreement by filing the Demurrer. On this point, Judge Thacher held: "The pleadings suggest that an actual controversy exists, and the Respondent has every intention of enforcing the restrictions if the Complainant begins to compete in contravention of the Non-Competition and Confidentiality Agreement." *Graves*, 65 Va. Cir. at 129-30.

In this case, Ms. Tomlin has pleaded in her Complaint that her "current and ongoing efforts . . . to conduct her trade and profession, including within the Commonwealth of Virginia, are in conflict with the stated limitations of the non-compete agreement." (Complaint, ¶ 184.)

The instant case is distinguishable from *Graves* for several reasons. First, the Complainant in *Graves* specifically pleaded that he wished to terminate his relationship with his employer and to compete within the restricted area. Specifically, he alleged a desire to practice dentistry within the six-mile area restricted by the agreements.

In the instant case, however, Ms. Tomlin has not pleaded a similar desire to engage in activities in violation of the Agreement. Ms. Tomlin merely alleges that a conflict exists between the agreement and her current and ongoing efforts to conduct her trade and profession, yet she does not articulate these current and ongoing efforts. The employer in *Graves* had expressed an intention at oral argument to enforce the non-competition agreement. *Graves*, 65 Va. Cir. at 130. Here the employer did not state such an intention at oral argument.

In the instant case, the Complaint does not allege that Ms. Tomlin ever approached or presented a specific situation to IBM regarding the possibility of waiving her Agreement. Lastly, the Court in *Graves* took into consideration the fact that the non-competition agreement at issue there contained a $200,000 liquidated damages provision. Regarding this, the Court stated: "This Court does not believe that it is necessary for the Complainant to breach the parties' contracts and place himself at a risk of such a significant liability in order to create standing." *Id.* There is no such provision in the matter presently before the Court.

In *Graves*, Judge Thacher did consider the fact that filing a demurrer indicated an intention by the employer to enforce the non-compete agreement. While that reasoning obviously applies here, the fact that a demurrer has been filed, standing alone, does not create an actual controversy.

IBM's Demurrer as to Count I, Declaratory Relief, is sustained with leave to amend to include facts to support Plaintiffs' conclusory allegation of the existence of an actual controversy. I am aware that the plaintiff has used the phrase "an actual controversy" in the complaint. I find, however, that this is merely conclusory and does not, in and of itself, establish a controversy.

### 2. *Demurrer to Count II: Defamation and Defamation Per Se*

Under Virginia law, the elements of the tort of defamation are (1) publication, (2) of an actionable statement, and (3) intent. *Wilson v. Miller Auto Sales, Inc.*, 47 Va. Cir. 153, 161 (Winchester 1998).

For a defamatory statement regarding one's professionalism to be actionable as defamation *per se*, it must fall into one of two categories:

> (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment; or
>
> (4) Those which prejudice such person in his or her profession or trade.

*Shupe v. Rose's Stores, Inc.*, 213 Va. 374, 376, 192 S.E.2d 766 (1972). "At common law, defamatory words that prejudice a person in his or her profession or trade are actionable as defamation *per se*." *Fuste v. Riverside Healthcare Association, Inc.*, 265 Va. 127, 132, 575 S.E.2d 858 (2003).

Defendants' Demurrer does not address the element of intent; therefore, a discussion of the remaining two elements of a claim for defamation follows.

### a. *Actionable Statement*

An actionable statement is one that involves a false statement of fact and tends to injure the plaintiff's reputation. In cases involving private individuals, Virginia courts apply the negligence standard when a substantial danger to the plaintiffs reputation is involved. *The Gazette, Inc. v. Harris*, 229 Va. 1, 325 S.E.2d 713 (1985). This means, consequently, that no actual malice is required in situations involving private figures. The Virginia Supreme Court has held that speech which does not contain a provably false factual connotation or that cannot be interpreted to contain actual facts about a person cannot form the basis of a defamation claim. See *Yeagle v. Collegiate Times*, 255 Va. 293, 295, 497 S.E.2d 136 (1998).

IBM argues that Plaintiffs' defamation claim fails because Plaintiffs do not identify any defamatory statements made by IBM agents or employees acting *outside* the scope of their employment and Plaintiffs have not pleaded the exact words constituting the allegedly defamatory statements.

On the first point, IBM contends that any statements attributed to Defendants Leung, Sirene, Quintyne, and Quinn are irrelevant because Plaintiffs' Complaint alleges in Counts III and IV that these individuals conspired with each other *outside* the scope of their employment to cause the terminations of Plaintiffs and to tortiously interfere with Plaintiffs' expectation of continued employment by IBM. Plaintiffs have pleaded,

however, that the allegedly defamatory statements attributable to these individual Defendants and imputed to IBM were made by the Defendants, acting both inside *and* outside the scope of their employment. (Complaint, ¶ 204.) Further, whether an agent was acting in the scope of his employment is a question of fact generally reserved for a jury determination and is not appropriate for determination on demurrer. *See Commercial Business Systems, Inc. v. Bellsouth Services, Inc.*, 249 Va. 39, 43-44, 453 S.E.2d 261 (1995); *Fox v. Deese*, 234 Va. 412, 428, 362 S.E.2d 699 (1987).

As to the second point, exactness of pleading, the Virginia Supreme Court addressed this issue in *Fuste v. Riverside Healthcare Assn., Inc.*, 265 Va. 127, 575 S.E.2d 858 (2003). In that case, the Court reiterated its holding in *Federal Land Bank of Baltimore v. Birchfield*, 173 Va. 200, 3 S.E.2d 405 (1939), stating that "good pleading requires that the exact words spoken or written must be set out in the declaration *in haec verba.*" *Fuste*, 265 Va. at 134. The Court in *Fuste* went on to state that the "pleading must go further, that is, it must purport to give the exact words." *Id.*

Plaintiffs allege generally the following defamatory statements by the individual Defendants imputed to IBM:

IBM, through its agents, made false and defamatory statements about Ms. Tomlin, Mr. Williams, and Mr. Tomlin to their IBM colleagues and to the Chairman of the Board of Directors.

IBM, through its agents, stated, implied, and advertised as the reason for Ms. Tomlin's termination that Ms. Tomlin had engaged in unethical conduct and violated IBM policy and procedures by hiring her brother and then setting his salary and band level, as set forth in ¶¶ 161-64 of the Complaint.

IBM, through its agents, stated and implied that Mr. Williams fraudulently filled out and submitted a hiring form pertaining to Mr. Tomlin, and that Mr. Williams engaged in unethical conduct and violated IBM policy and procedures by fraudulently filling out the form, as set forth in ¶¶ 170-71 of the Complaint. These statements were patently and demonstrably false, constituted fact or factually laden opinion which can be substantially proven false, and constituted defamation or defamation *per se.*

IBM, through its agents, stated, implied, and advertised as the reason for Mr. Tomlin's termination that he had falsely filled out the employment application to include skills he did not have in order to procure a job with IBM, as set forth in ¶¶ 167-68 of the Complaint.

(Complaint, ¶¶ 189-92.)

Plaintiffs' Complaint goes on to specifically allege the following defamatory statements made by each of the individual Defendants:

Ms. Minton-Package told employees at IBM that the reason Ms. Tomlin was fired was because she had hired her brother and then tried to "cover it up."

Mr. Sirene told Dr. Viera as well as others that Mr. Tomlin did not meet the minimum qualifications to be a consultant and that he was hired solely because he was Ms. Tomlin's brother.

On information and belief, Mr. Leung instigated and repeated the false statements set forth in ¶¶ 189-92, knowing they were false.

Mr. Quinn falsely stated that Mr. Williams fraudulently filled out and submitted a hiring form pertaining to Mr. Tomlin, even though he was the person who made the request to Mr. Williams to fill out such form, and had engaged in a similar practice numerous times in the past.

Mr. Quintyne falsely stated to multiple persons that Mr. Tomlin falsified his employment application, that Ms. Tomlin and Mr. Williams conspired to cover up that Ms. Tomlin made the hiring decision for Mr. Tomlin and determined the band for his salary, that it was illegal, unethical, and/or improper to hire Mr. Tomlin because he was Ms. Tomlin's brother, that Mr. Williams engaged in improper and/or illegal conduct, including falsifying an interview form, that Ms. Tomlin improperly and/or unethically used the influence of her position to get Mr. Tomlin hired and to set an inappropriate salary band, and that Ms. Tomlin, Mr. Williams, and Mr. Tomlin had conspired to cover up their illegal acts.

These statements, as set forth in ¶¶ 190-97 were repeated to multiple employees, officers, and, on information and belief, the Chairman of the Board and potentially other Board members and published and disseminated in an investigative report by Mr. Quintyne.

(Complaint, ¶¶ 193-98.)

Plaintiffs, very simply, have failed to plead any exact words with respect to the individual Defendants except Defendant Minton-Package. In their Opposition, Plaintiffs cite a number of Paragraphs as specific examples of "exact words" constituting the allegedly defamatory statements, including ¶¶ 190-94; 197. Of these, only Paragraph 193 contains any exact words.

Even by the standard set forth in their own opposition briefs, Plaintiffs have failed to plead the allegedly defamatory statements with sufficient particularity. Plaintiffs assert that, in order to prevail on a defamation claim, a "sufficient number" of the defamatory words must be proven "to make out a good cause of action. . . . They must be substantially proven as alleged." *Federal Land Bank v. Birchfield*, 173 Va. 200, 215, 3 S.E.2d 405 (1939); *see also Government Micro Resources, Inc. v. Jackson*, 271 Va. 29, 41, 624 S.E.2d 63 (2006). (Plaintiffs' Opposition to IBM Demurrer, at 9.) Plaintiffs have pleaded exact defamatory words only as to Defendant Minton-Package

and have therefore certainly not met the "sufficient number" standard as to any of the other Defendants.

Because Plaintiffs have failed to plead any exact words constituting the allegedly defamatory statements made by Defendants Sirene, Leung, Quinn and Quintyne, the Court will proceed to a discussion of publication and qualified privilege only as to Defendant Minton-Package.

### b. *Publication*

Defamatory statements must be "published" to a third party in order to be actionable as common law defamation. *Dickenson v. Wal-Mart Stores, Inc.*, 1997 U.S. Dist. LEXIS 19459 at *8 (W.D. Va. Nov. 3, 1997). Plaintiffs have pleaded that the allegedly defamatory statements by Defendant Minton-Package were communicated to "employees at IBM." (Complaint, ¶ 193.)

Defendant IBM relies on *Dickenson* as support for its argument that statements made among IBM agents and employees cannot qualify as "publication." The Court in that case held:

> When communication is intra-corporate and is heard by only those who have the duty or authority to receive the information, no publication has occurred. Thus, communication between officers of the same corporation in the due and regular course of the corporate business does not constitute publication to third persons.

*Dickenson*, at *9.

In this case, Plaintiffs have not alleged any facts to establish that the allegedly defamatory statements by Minton-Package were communicated to other IBM employees who did not have a duty or authority to receive that communication. As such, Plaintiffs have failed to establish publication of these statements. Although this finding could end the analysis, in the interests of completeness, I also will address the issue of qualified privilege.

### c. *Qualified Privilege/Malice*

The Virginia Supreme Court has long held that "[a] communication, made in good faith, on a subject matter in which the person communicating has an interest, or owes a duty, legal, moral, or social, is qualifiedly privileged if made to a person having a corresponding interest or duty." *Taylor v. Grace*, 166 Va. 138, 144, 184 S.E. 211 (1936). In *Thalhimer Bros. v. Shaw*, 156 Va. 863, 868, 159 S.E. 87 (1931), the Court stated: "The modern authorities hold that a communication containing defamatory matter made to a business associate or servant in the ordinary and natural course of business is not actionable." Put another way, these communications are privileged. As stated above, Plaintiffs have failed to identify any allegedly defamatory

statements made by Minton-Package to other IBM employees who did not have a duty or authority to receive that communication.

Virginia courts also have recognized that allegations of malice can defeat the qualified privilege. "Communications between persons on a subject in which the persons have an interest or duty are occasions of privilege. However, the privilege attaching to such occasions is a qualified privilege which may be defeated if the plaintiff proves that the defamatory statement was made maliciously." *Larimore v. Blaylock*, 259 Va. 568, 572, 528 S.E.2d 119 (2000) (citing *Chalkley v. Atlantic Coast Line RR.*, 150 Va. 301, 306, 143 S.E. 631 (1928)).

Plaintiffs unsuccessfully attempt in the instant case to defeat the privilege with respect to Defendant Minton-Package by pleading conclusory assertions of malice. In *Jarrett v. Goldman*, 67 Va. Cir. 361 (Portsmouth 2005), in which a former employee sued his former employer and two supervisors for defamation, the Court addressed the question of what must be pleaded in order to defeat privilege. The Court, in assessing the plaintiff's allegations of malice, held:

> In this case, Jarrett alleges that [supervisor] made the statement with common-law malice and that it was designed to discredit Jarrett. However, other than saying that the statement was designed to discredit Jarrett, plaintiff Jarrett provided no other factual allegations in support of his assertion that the statement was made with common-law malice. For example, Jarrett never alleged facts showing that the statement was actuated by some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff. The absence of such factual allegations prevents plaintiff from stating a claim for defamation that could ultimately support a finding by clear and convincing evidence (or even a preponderance of the evidence) that the alleged statement was made with actual common-law malice. Therefore, plaintiff has failed to state sufficient facts to support a cause of action for defamation based upon [supervisor]'s statement.

*Jarrett*, 67 Va. Cir. at 375-76. Similarly, Plaintiffs here fail to allege any facts sufficient to plead common law malice against Defendant Minton-Package. Plaintiffs do no more than plead general conclusory allegations such as the Defendants' "statements were made because of malice, hatred, ill will, or a desire to injure or irreparably injure Ms. Tomlin, Mr. Williams, and Mr. Tomlin." (Complaint, ¶ 206.) Plaintiffs allege no facts to support the conclusory allegations of malice. Further, these conclusory allegations are pleaded generally with regard to all Defendants, and Plaintiffs have failed to allege any facts to support specifically a finding of malice on the part of Minton-Package.

Because Plaintiffs have failed to plead any exact words constituting the allegedly defamatory statements by Defendants Sirene, Leung, Quinn, and Quintyne, and have failed to establish that the allegedly defamatory statements by Minton-Package were communicated in a way that constitutes publication, IBM's Demurrer to Count II is sustained with leave to amend to include exact words and to establish publication to third parties without a duty or authority to receive the communications.

### 3. *Demurrer to Count IV: Common Law Conspiracy*

Under Virginia law, a conspiracy consists of two or more persons combined to accomplish some concerted action, either (1) a criminal or unlawful purpose by criminal or unlawful means or (2) some lawful purpose by a criminal or unlawful means. *Commercial Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 249 Va. 39, 48, 453 S.E.2d 261 (1995).

The intra-corporate immunity doctrine concerns the requirement that the concerted action be undertaken by two or more persons, "By definition, a single entity cannot conspire with itself." *Fox v. Deese*, 234 Va. 412, 428, 362 S.E.2d 699 (1987). "Since a corporation is merely a legal entity wholly created by law, it can act only through its agents, officers, and employees; therefore, a conspiracy between a corporation and the agents of that corporation who are acting in the scope of their employment is a legal impossibility." *Dell v. French*, 38 Va. Cir. 91, 98 (Fairfax 1995). It is thus well settled that, "if the relationship between the alleged conspirators is that of principal-agent or employer-employee, then the defendants are not separate entities. An entity cannot conspire with itself." *TradeStaff & Co. v. Nogiec*, 77 Va. Cir. 77, 84 (Chesapeake 2008) (citing *Charles E. Brauer Co. v. NationsBank*, 251 Va. 28, 37, 466 S.E.2d 382 (1996)).

Plaintiffs have pleaded agency for all the alleged co-conspirators. Plaintiffs have also pleaded that the individual Defendants acted both "inside and outside the scope of their employment." (Complaint, ¶ 204.) However, Virginia does not recognize the "independent personal stake" exception to the intra-corporate immunity doctrine. *Little Professor Book Co. of Reston, Va., Inc. v. Reston North Point Village, Ltd. P'ship*, 41 Va. Cir. 73, 81 (Fairfax 1996). Further, Plaintiffs have pleaded agency for all of the alleged co-conspirators and have provided nothing more than a conclusory allegation that these individual Defendants were acting both inside and outside the scope of their employment. I find that Plaintiffs have provided no factual allegations to support this conclusory assertion.

IBM's Demurrer to Count IV, Common Law Conspiracy, is sustained with leave to amend, to include facts to support Plaintiffs' conclusory allegation that the Defendants were acting outside the scope of their employment.

#### 4. *Demurrer to Count V: Negligent Retention of Employees*

In order to establish a claim for negligent retention, it must be proven that (1) the employer knows or should know that the employee poses an unreasonable risk of harm to others, (2) the employer fails to attempt to prevent further harm by the employee, and (3) the employee subsequently injures another person. *Fisher v. A. W. Temple, Inc.*, 2000 Va. Cir. LEXIS 193 (August 4, 2000).

With regard to the first element, Plaintiffs have pleaded the following:

> IBM had actual and constructive knowledge that Mr. Leung, Mr. Quintyne, Mr. Quinn, and Mr. Sirene were conspiring to engineer the terminations of Ms. Tomlin, Mr. Williams, and Mr. Tomlin, and were furthering false accusations of ethical misconduct against Ms. Tomlin and Mr. Williams, engaging in sham investigations, and purposely withholding guidance and training from Mr. Tomlin because of his association with Ms. Tomlin.

(Complaint, ¶ 261.) Plaintiffs have failed to allege that IBM knew of the individual Defendants' propensity to harm before they purportedly began causing the alleged harm.

IBM's Demurrer as to Count V, Negligent Retention of Employees, is sustained with leave to amend, to include factual allegations of knowledge on the part of Defendant IBM that the individual Defendants posed an unreasonable risk of harm to others, namely, the Plaintiffs, before the individual Defendants began causing the alleged harms.

### B. *Defendants Leung, Sirene, and Quintyne*

Defendant Albert T. Leung is a Vice President in the Global Business Services Division of IBM at its Herndon, Virginia, offices. Defendant Clement A. Quintyne is a Senior Audit Investigator based in IBM's North Carolina offices. Mr. Quintyne conducted the investigation of the events giving rise to the instant action. Defendant Walter H. Sirene is an IBM employee at the Herndon, Virginia, offices.

#### 1. *Demurrer to Count II: Defamation and Defamation Per Se*

Plaintiffs fail to state a cause of action for defamation or defamation *per se* against Defendants Leung, Sirene and Quintyne because they have not adhered to the heightened pleading requirement set forth by the Virginia Supreme Court in *Fuste v. Riverside Healthcare Assn., Inc.*, 265 Va. 127, 575 S.E.2d 858 (2003). While it is true that Plaintiffs do not need to plead such specifics as the identity of the speaker and other details surrounding

the purportedly defamatory statements, Plaintiffs are required to plead the *exact* defamatory words allegedly spoken by the Defendants. Plaintiffs have failed to plead any exact words purportedly spoken by Defendants Leung, Sirene, and Quintyne. I address each of these three Defendants in more detail below.

### a. *Leung*

Plaintiffs' Complaint contains only one paragraph alleging defamatory statements made by Defendant Leung. Plaintiffs allege in Paragraph 195 that Leung instigated and repeated the false statements set forth in ¶¶ 189-92 with the knowledge that the statements were false. Paragraphs 189-92 of the Complaint state the following:

> IBM, through its agents, made false and defamatory statements about Ms. Tomlin, Mr. Williams, and Mr. Tomlin to their IBM colleagues and to the Chairman of the Board of Directors.
> IBM, through its agents, stated, implied, and advertised as the reason for Ms. Tomlin's termination that Ms. Tomlin had engaged in unethical conduct and violated IBM policy and procedures by hiring her brother and then setting his salary and band level, as set forth in ¶¶ 161-164 of the Complaint.
> IBM, through its agents, stated, and implied that Mr. Williams fraudulently filled out and submitted a hiring form pertaining to Mr. Tomlin, and that Mr. Williams engaged in unethical conduct and violated IBM policy and procedures by fraudulently filling out the form, as set forth in ¶¶ 170-171 of the Complaint.
> IBM, through its agents, stated, implied and advertised as the reason for Mr. Tomlin's termination that he had falsely filled out the employment application to include skills he did not have in order to procure a job with IBM, as set forth in ¶¶ 167-168 of the Complaint.

(Complaint, ¶¶ 189-92.)

These paragraphs of the Complaint and the other paragraphs referenced do not contain any exact words allegedly spoken by Leung. While these paragraphs indicate the general nature of the defamatory statements, they do not contain the exact words alleged to be defamatory.

Notwithstanding the fact that the pleadings fail to satisfy the heightened pleading requirement for defamation, not all of the required elements of a cause of action for defamation against Leung have been pleaded. Specifically, Plaintiffs have failed to plead that the allegedly defamatory statements were published to third parties without a duty or authority to receive the communications. Plaintiffs state only that Leung repeated the purportedly false statements.

The Demurrer of Defendant Leung as to Count II, Defamation and Defamation *Per Se,* is sustained with leave to amend to allege exact words constituting the purportedly defamatory statements and to establish publication to third parties without a duty or authority to receive the communications.

### b. *Sirene*

Plaintiffs likewise fail to meet the heightened pleading requirements for a defamation claim against Defendant Sirene. Again, Plaintiffs fail to plead any exact words allegedly spoken by Sirene. Moreover, Plaintiffs fail to plead any publication of the allegedly defamatory statements by Sirene to any third person without a duty or authority to receive the communications. Plaintiffs plead in their Complaint that Sirene sought the advice of Dr. Leanne Viera, an SCM executive reporting to Ms. Tomlin, regarding Mr. Tomlin's computer skills and his difficulty in placing him on a project. (Complaint, ¶¶ 107, 110.) Sirene is accused of telling Dr. Viera and others that "Mr. Tomlin did not meet the minimum qualifications to be a consultant, and that he was hired solely because he was Ms. Tomlin's brother." (Complaint, ¶ 194.)

Both Sirene, who was Mr. Tomlin's second-level supervisor, and Dr. Viera had an interest in the subject matter of the communications at issue. There is no allegation in Plaintiffs' pleadings that these statements of opinion were made outside the regular course of business.

Factual statements made in support of an opinion can form the basis for a defamation action. *Hyland v. Raytheon Technical Services Co.,* 277 Va. 40, 47, 670 S.E.2d 746 (2009) (*"Hyland II"*); *Raytheon Technical Services Co. v. Hyland,* 273 Va. 292, 303, 641 S.E.2d 84 (2007) (*"Hyland I"*). Simply couching statements in terms of opinion does not create a wholesale defamation claim exemption; opinions may be actionable where they imply an assertion of an objective fact. *Hyland I,* 273 Va. at 303.

In determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement; instead, the court must consider the statement as a whole. *Hyland II,* 277 Va. at 47; *Hyland I,* 273 Va. at 303; *Government Micro Resources,* 271 Va. at 40 (statements that the employee's mismanagement caused company to lose money and was the basis for the employee's termination were statements of fact that could be proven). Although a defamatory statement may be inferred, a court may not extend the meaning of the words used beyond their ordinary and common acceptance. *Tronfeld v. Nationwide Mutual Ins., Co.,* 272 Va. 709, 714, 636 S.E.2d 447 (2006).

Speech that does not contain a provably false factual connotation or statements that cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action. *Hyland*

*I*, 273 Va. at 304-05 (whether evaluator's statements that the employee's team missed its goals by the stated percentages and that the employee led protests and was responsible for visible losses is susceptible to empirical proof); *Tronfeld*, 272 Va. at 714 (finding that statements that attorney took his client's money without rendering a service of value in return is capable of disproof by evidence); *Fuste*, 265 Va. at 132 (finding that statements that doctors "abandoned" their patients and that there were "concerns about their competence" were provably false factual connotations).

Plaintiffs appear to argue that *Hyland I* holds that any purely intra-corporate communication, pleaded with or without malice, can form the basis for a defamation claim. I do not agree with Plaintiffs' interpretation of the case. *Hyland I* stands for the proposition that, although performance reviews normally will contain the evaluates' opinions, performance reviews may form the basis of defamation claims if the reviewer makes false statements of fact with malice. *Hyland I*, 273 Va. at 302.

In this case, Plaintiffs' Complaint contains only conclusory assertions of malice on the part of Defendant Sirene. Plaintiffs have accused Sirene generally of harboring feelings of "personal animosity" towards Ms. Tomlin and Mr. Tomlin, but have pleaded no factual allegations even to link such alleged feelings to the purported defamatory statements at issue.

The Demurrer of Defendant Sirene as to Count II, Defamation and Defamation *Per Se*, is sustained with leave to amend to allege exact words constituting the purportedly defamatory statements, to establish publication to third parties without a duty or authority to receive the communications, and to plead factual allegations to support Plaintiffs' general assertions of malice.

### c. *Quintyne*

The same arguments apply to the claim for defamation against Defendant Quintyne. Again, the Plaintiffs have failed to plead any exact words allegedly spoken by Quintyne. In addition, they have failed to plead that Quintyne published the statements to any third party without the duty or authority to receive the communications. Quintyne conducted the investigation of the alleged unethical conduct of Ms. Tomlin based on the anonymous letter IBM received. His repetition of any statements regarding any of the Plaintiffs was therefore (1) to employees of IBM whom he needed to interview and therefore had an interest in the matter and (2) in the regular course of business pursuant to an investigation of unethical conduct by an employee. Further, Plaintiffs' Complaint is devoid of any factual allegations to support their general and conclusory assertion of malice.

The Demurrer of Defendant Quintyne as to Count II, Defamation and Defamation *Per Se*, is sustained with leave to amend, to allege exact words constituting the purportedly defamatory statements, to establish publication

to third parties without a duty or authority to receive the communications, and to plead factual allegations to support Plaintiffs' general assertions of malice.

## 2. Demurrer to Count III: Tortious Interference with Business Expectancy

Tortious interference with a contract occurs when a defendant intentionally uses improper means under the circumstances to interfere with the known contract expectancy of plaintiff, and, as a result, plaintiff suffers a loss. *Maximus, Inc. v. Lockheed Information Management Systems Co.*, 254 Va. 408, 493 S.E.2d 375 (1997). Malice is not an element of the cause of action, even where the defendant raises an affirmative defense, and the "improper methods" of interference need only be "improper under the circumstances." *Id.* at 414.

A claim of tortious interference with contract with regard to at-will agreements must satisfy five elements: (1) existence of a valid contractual relationship; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference causing breach of the relationship or expectancy; (4) damage for the party for whom the relationship is disrupted; and (5) *improper means* employed by the interferor to achieve interference with the relationship. *Duggin v. Adams*, 234 Va. 221, 226-27, 360 S.E.2d 832 (1987) (emphasis added). To state a claim for tortious interference to survive a demurrer, a plaintiff must sufficiently plead all of the elements.

With regard to the "improper means" element in particular, courts have held that this term means a method that is "illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules." *Id.* at 227-28. Such means can include violence, threats, bribery, unfounded litigation, defamation, fraud, misrepresentation, duress, undue influence, misuse of confidential information, or breach of a fiduciary relationship. *Id.* Violations of professional standards or ethical rules, overreaching, and unfair competition can also constitute "improper means" for the purpose of proving tortious interference. *Id.*

It is well established under Virginia law that a tortious interference claim will not lie if the alleged interferor is a party to the contract at issue; a party cannot intentionally interfere with its own contract, unless he unites with a third party. *Fox v. Deese*, 234 Va. 412, 427, 362 S.E.2d 699 (1987). Furthermore, "if an employee is acting within the scope of his employment, he is acting as an agent of his employer and cannot be labeled as 'an interferer or third party'." *Hiers v. Cave Hill Corp.*, 51 Va. Cir. 208, 213 (Rockingham 2000) (rev'd on other grounds).

In the instant case, Plaintiffs have failed to sufficiently plead all the elements of a claim for tortious interference with an at-will agreement. As a threshold matter, if the claim for defamation against the Defendants does

not withstand demurrer, then defamation cannot be used as the basis for the improper methods element of Plaintiffs' claim of tortious interference with an at-will contract. Plaintiffs argue that they have properly pleaded facts that allege improper methods by Defendants other than defamation, including:

> Deception and dishonesty by going behind Plaintiffs' back, alleging or implying that certain conduct was improper, illegal, or inappropriate, knowing that it was not, defaming the Plaintiffs, suggesting or implying they were not credible, scheming to get Plaintiffs fixed, being secretive, omitting important facts, not following procedure, not fully and properly investigating the facts and allegations, making improper credibility determinations, conspiring to injure Plaintiffs' reputations, claiming that Ms. Tomlin engaged in unethical hiring practice by hiring Mr. Tomlin, falsely accusing Ms. Tomlin of setting Mr. Tomlin's salary and band level, stating that she had violated IBM's hiring policies, claiming that Mr. Williams falsified forms, omitting that Mr. Williams was asked to sign the form, claiming that Mr. Tomlin falsified the employment application, not investigating others who had access, motivation, and opportunity, and refusing to investigate or acknowledge relevant IBM's practices and procedures at issue.

(*See* Complaint, ¶¶ 111-20, 112-25, 129-41, 145, 152, 161-73, 161-64, 167-68, 170-71, 189-92, 225-26.)

While improper means do not need to be inherently illegal or tortious and unethical conduct can satisfy this element, it is not abundantly clear that the conduct alleged by Plaintiffs constitutes improper means. Irrespective of whether I find that improper methods were or were not used, the fact remains that the Defendants are not *third parties* and cannot therefore interfere. Plaintiffs have pleaded agency for each of these Defendants, and, as such, they are not third parties and cannot be deemed interferors. Plaintiffs have failed to plead any factual allegations to support their conclusory assertion that Defendants were acting not only inside, but also outside the scope of their employment.

The Demurrer of Defendants Leung, Sirene, and Quintyne as to Count III, Tortious Interference with Business Expectancy, is sustained with leave to amend to plead factual allegations to support the assertion that these Defendants were acting outside the scope of their employment.

### 3. *Demurrer to Count IV: Common Law Conspiracy*

Three elements establish a cause of action for common law conspiracy: (1) two or more persons acting in concert; (2) for some unlawful purpose

or for some lawful purpose by unlawful means; and (3) resulting damages. *Country Vintner, Inc. v. Latour*, 272 Va. 402, 412, 634 S.E.2d 745 (2006). Claims for conspiracy must be pleaded with particularity. *See Bowman v. State Bank of Keysville*, 229 Va. 534, 541, 331 S.E.2d 797 (1985). For a conspiracy claim to survive a demurrer, it must "at least allege an unlawful act or an unlawful purpose." *Station # 2, L.L.C. v. Lynch*, 280 Va. 166, 173, 695 S.E.2d 537 (2010).

As discussed above, Plaintiffs have failed to plead the first prong of the test for common law conspiracy, namely, two or more persons acting in concert. Plaintiffs have also failed to plead with particularity the second prong of the test, an illegal objective or a lawful objective carried out illegally. Merely alleging that Leung had a personal vendetta against the Plaintiffs because he was passed over for a promotion does not indicate an illegal objective or a lawful objective carried out illegally.

Finally, even if the Defendants were acting in the scope of their employment, the independent personal stake exception would not apply to negate the intra-corporate immunity doctrine. Because the Virginia Supreme Court has not recognized an exception to the intra-corporate conspiracy doctrine, *Little Professor Book Co.*, 41 Va. Cir. at 80, it makes no difference whether the individual Defendants were acting on their own behalf or on behalf of IBM.

The Demurrer of Defendants Leung, Sirene, and Quintyne as to Count IV, Common Law Conspiracy, is sustained with leave to amend to include facts to support Plaintiffs' conclusory allegation that the Defendants were acting outside the scope of their employment.

## C. Defendant Minton-Package

Minton-Package is Executive Assistant to IBM Public Sector General Manager, Chuck Prow. Only Count II: Defamation and Defamation *Per Se* is asserted against Minton-Package.

### 1. Demurrer to Count II: Defamation and Defamation Per Se

Plaintiffs' Complaint asserts that, "[u]pon information and belief," Minton-Package "told employees at IBM that the reason Ms. Tomlin was fired was because she had hired her brother and then tried to `cover it up'." (Complaint, ¶¶ 174, 193.) This is the sole allegation specifically regarding Defendant Minton-Package in the entire Complaint. The elements of an actionable statement and publication are discussed individually below.

### a. *Ms. Tomlin*

#### i. *Actionable Statement*

Plaintiffs allege that Minton-Package "told employees at IBM that the reason Ms. Tomlin was fired was because she had hired her brother and then tried to 'cover it up'." (Complaint, ¶¶ 174, 193.) The only exact words contained in Plaintiffs' allegation against Minton-Package are that Ms. Tomlin tried to "cover it up," referring to the allegation that Ms. Tomlin hired her brother. A reasonable inference could be drawn that the individual identified in this statement, Ms. Tomlin, as a matter of fact, engaged in the stated conduct. Put another way, this statement reasonably could be understood to convey a provably false representation of fact. *See Yeagle v. Collegiate Times*, 255 Va. at 296. The alleged defamatory statement made by Minton-Package, as pleaded in Plaintiffs' Complaint, thus constitutes an actionable statement for purposes of Plaintiffs' defamation claim.

#### ii. *Publication/Qualified Privilege*

Plaintiffs assert that the allegedly defamatory statement(s) made by Minton-Package were published to other IBM employees. Because Plaintiffs have failed to allege any facts to establish that the allegedly defamatory statements by Minton-Package were communicated to other IBM employees who did not have a duty or authority to receive that communication, Plaintiffs have failed to establish the element of publication. Further, as discussed above, Plaintiffs have likewise failed to plead sufficient facts to allege common law malice on the part of Minton-Package, so as to defeat privilege.

Defendant Minton-Package's Demurrer to Count II is sustained with leave to amend as to Plaintiff Robin Tomlin to include facts establishing publication to third parties without the duty or authority to receive the communications and to support Plaintiffs' conclusory assertion of malice on the part of Defendant Minton-Package.

### b. *Mr. Tomlin and Mr. Williams*

Minton-Package asserts that Plaintiffs Mr. Tomlin and Mr. Williams state no claims against her. Plaintiffs counter this with the claim that the alleged statements made by Minton-Package prejudice Mr. Tomlin and Mr. Williams. Specifically, Plaintiffs contend that, when evaluating all insinuations, implications, and inferences of Minton-Package's statements, *Hyland II*, 277 Va. at 47-48, Minton-Package's comments about a purported "cover up" implicate not only Ms. Tomlin, but also Mr. Tomlin and Mr. Williams.

In *Gazette, Inc. v. Harris*, 229 Va. 1, 325 S.E.2d 713 (1985), the Virginia Supreme Court provided the following regarding what constitutes an actionable statement:

> In Virginia, a libel plaintiff must show that the alleged libel was published "of or concerning" him. He need not show that he was mentioned by name in the publication. Instead, the plaintiff satisfies the "of or concerning" test if he shows that the publication was intended to refer to him and would be so understood by persons reading it who knew him. In other words, the test is met if the plaintiff shows that the publication was "in its description or identification such as to lead those who knew or knew of the plaintiff to believe that the article was intended to refer to [him]." But if the publication on its face does not show that it applies to the plaintiff, the publication is not actionable, unless the allegations and supporting contemporaneous facts connect the libelous words to the plaintiff.

*Gazette*, 229 Va. at 37 (internal citations omitted). Further, "a defamatory charge may be made by inference, implication, or insinuation." *Id.* at 29 (citing *Carwile v. Richmond Newspapers*, 196 Va. 1, 7, 82 S.E.2d 588 (1954)).

To this end, Plaintiffs submit "the Complaint sets forth the deceitful effort Defendants went through to harm the Plaintiffs, including `investigating' all three, and ultimately terminating them all on the same day for the same alleged misconduct." (Plaintiffs' Opposition to Minton-Package Demurrer, at 10.)

Neither Mr. Tomlin nor Mr. Williams is mentioned by name in the allegedly defamatory statements at issue. The statements purportedly made by Minton-Package, if in fact published, can be deemed to have been done so "of or concerning" Mr. Tomlin. It is clear from the face of the alleged statements made by Minton-Package that they apply and refer not only to Ms. Tomlin, but also to her brother, Mr. Tomlin. However, at oral argument, when asked by the Court, Plaintiffs decline to address this very issue, stating that they have not pleaded that Minton-Package made defamatory statements about Mr. Tomlin and Mr. Williams. (Minton-Package Demurrer Hearing Transcript, page 11, lines 2-19.)

> The Court: Well, what about the assertion that she [Defendant Minton-Package] didn't even make a statement about the — what are the two defendant's [sic] she didn't even make a statement about?
> Mr. Brown: Williams and Mr. Tomlin.
> The Court: Yes. What do you say about that?
> Ms. Sakata: Well, I mean, I think, Your Honor, I think it's sort of an argument that's not needing, respectfully not needing to be made

because we've alleged defamation by the plaintiffs to the defendants. I think that the time to deal with that would be the jury instructions when you're saying this person has alleged a claim against this person. I don't think it's an issue on demurrer because we haven't pleaded that she's made defamatory statements about the other people. So I don't quite know what to say other than that I don't think it's an argument that needs to be addressed.

Moreover, Plaintiffs have not shown that the alleged defamatory statements made by Minton-Package, if published, were "of and concerning" Mr. Williams. Mr. Williams was terminated for having fraudulently filled out a form pertaining to the hiring of Mr. Tomlin. While this is factually related to the termination of Ms. Tomlin for having hired her brother, Plaintiffs have pleaded nothing to show that the statements purportedly made by Minton-Package intended to refer to Mr. Williams and that someone on the receiving end of said statements would necessarily understand the statements to be in reference to Mr. Williams. Absent such a showing, Plaintiff Williams cannot prevail on his defamation claim against Minton-Package.

Minton-Package's Demurrer is sustained without leave to amend as to Plaintiffs Russell Tomlin and James Williams based on Plaintiffs' representations at oral argument.

## D. *Defendant Quinn*

Defendant Kevin M. Quinn is an employee of Manpower, Inc., who was providing recruiting services to IBM pursuant to a contract between IBM and Manpower.

### 1. *Demurrer to Count II: Defamation and Defamation Per Se*

Plaintiffs' Complaint contains only one paragraph concerning the defamation purportedly attributable to Defendant Quinn:

> Mr. Quinn falsely stated that Mr. Williams fraudulently filled out and submitted a hiring form pertaining to Mr. Tomlin, even though he was the person who made the request to Mr. Williams to fill out such form, and had engaged in a similar practice numerous times in the past.

(Complaint, ¶ 196.) Paragraph 171 of Plaintiffs' Complaint explains in somewhat greater detail the situation referenced in Paragraph 196:

> To the best of Mr. Williams' knowledge, Mr. Williams had filled out an interview evaluation form pertaining to Mr. Tomlin in June 2010,

on the day after Mr. Tomlin's offer was processed, at the request of Mr. Quinn. He had done this as Recruiting could not find its copy and in order to have a complete file, Mr. Quinn requested Mr. Williams fill out the form since he had been one of the interviewers of Mr. Tomlin, and Recruiting (i.e. Mr. Quinn) was not permitted to do so, and only people from the Hiring practice area could per IBM policy. This was not the first time that Mr. Quinn or another recruiter had made a request to complete missing paperwork *post hoc* for new recruits in the prior five years.

(Complaint, ¶ 171.)

### a. *Mr. Williams*

Plaintiffs again have failed to plead any exact words constituting the allegedly defamatory statements attributable to Defendant Quinn and thus have not met the heightened pleading requirement for their defamation claim against him. Plaintiffs have likewise failed to plead any factual allegations to support the element of publication to a third party without the duty or authority to receive the communications. Further, Plaintiffs' allegations fail to establish malice on the part of Defendant Quinn, such as would overcome the privilege attached to this communication.

Defendant Quinn's Demurrer as to Count II, Defamation and Defamation *Per Se*, is sustained with leave to amend as to Plaintiff James Williams to plead exact words constituting the defamatory statements and to plead facts to support publication to third parties.

### b. *Ms. Tomlin and Mr. Tomlin*

Plaintiffs Robin Tomlin and Russell Tomlin have failed to state a cause of action against Defendant Quinn for defamation. Plaintiffs' Complaint is devoid of any allegations that Defendant Quinn made any defamatory statements about either Ms. Tomlin or Mr. Tomlin.

Defendant Quinn's Demurrer as to Count II is sustained with leave to amend as to Plaintiffs Robin Tomlin and Russell Tomlin to include factual allegations of defamatory statements made by Defendant Quinn.

### 2. *Demurrer to Count III: Tortious Interference with Business Expectancy*

In support of their claim for tortious interference, Plaintiffs plead only the following general allegation against Defendant Quinn:

Mr. Quinn, acting outside the scope of his employment, conspired with Mr. Leung, Mr. Quintyne, Mr. Sirene, and with others, and acting

individually, employed improper means to interfere with the business expectancies of Ms. Tomlin, Mr. Williams, and Ms. Tomlin.

(Complaint, ¶ 223.) (It appears that Plaintiffs intended to plead "with the business expectancies of Ms. Tomlin, Mr. Williams, and Mr. Tomlin.") Plaintiffs allege generally the "improper means" employed collectively by Defendants Leung, Quintyne, Quinn, and Sirene in Paragraph 225, cited above. Irrespective of whether I find that improper methods were or were not used, the fact remains that the Defendant is not a *third party* and cannot therefore interfere. Plaintiffs have pleaded agency for Defendant Quinn, and as such, he is not a third party and cannot be deemed an interferor. Plaintiffs have failed to plead any factual allegations to support their conclusory assertion that Defendant Quinn was acting not only inside, but also outside the scope of his employment.

As such, Defendant Quinn's Demurrer as to Count III is sustained with leave to amend to plead factual allegations to support the assertion that Defendant Quinn was acting outside the scope of his employment.

### 3. *Demurrer to Count IV: Common Law Conspiracy*

In support of Count IV, Plaintiffs have alleged generally the following:

IBM, Mr. Leung, Mr. Quintyne, Mr. Quinn, and Mr. Sirene conspired with each other, and with others, causing financial, emotional, and physical distress and loss to Ms. Tomlin, Mr. Williams, and Mr. Tomlin.

(Complaint, ¶ 238.) Paragraph 239, which alleges the purportedly "unlawful means" employed by the Defendants, is identical to Plaintiffs' allegations of "improper means" above. Plaintiffs again seem to be relying on their allegations of defamation by Defendant Quinn as the basis for their conspiracy claim. This is insufficient, as Plaintiffs' defamation claim does not survive Defendant Quinn's demurrer. Further, Plaintiffs have pleaded nothing more than a conclusory allegation that Defendant Quinn acted both inside and outside the scope of his employment and thus have failed to plead two or more persons forming the alleged conspiracy.

Defendant Quinn's Demurrer as to Count IV is sustained with leave to amend to include facts to support Plaintiffs' conclusory allegation that the Defendant was acting outside the scope of his employment.

## Conclusion

IBM's Demurrer as to Count I: Declaratory Relief is sustained with leave to amend to include facts to support Plaintiffs' conclusory allegation of the existence of an actual controversy.

IBM's Demurrer to Count II: Defamation and Defamation *Per Se* is sustained with leave to amend to include exact words and to establish publication to third parties without a duty or authority to receive the communications.

IBM's Demurrer to Count IV: Common Law Conspiracy is sustained with leave to amend to include facts to support Plaintiffs' conclusory allegation that the Defendants were acting outside the scope of their employment.

IBM's Demurrer as to Count V: Negligent Retention of Employees is sustained with leave to amend to include factual allegations to support knowledge on the part of Defendant IBM that the individual Defendants posed an unreasonable risk of harm to others, namely the Plaintiffs, before the individual Defendants began causing the alleged harms.

The Demurrer of Defendant Leung as to Count II: Defamation and Defamation *Per Se* is sustained with leave to amend to allege exact words constituting the purportedly defamatory statements and to establish publication to third parties without a duty or authority to receive the communications.

The Demurrer of Defendant Sirene as to Count II: Defamation and Defamation *Per Se* is sustained with leave to amend to allege exact words constituting the purportedly defamatory statements, to establish publication to third parties without a duty or authority to receive the communications, and to plead factual allegations to support Plaintiffs' general assertions of malice.

The Demurrer of Defendant Quintyne as to Count II: Defamation and Defamation *Per Se* is sustained with leave to amend to allege exact words constituting the purportedly defamatory statements, to establish publication to third parties without a duty or authority to receive the communications, and to plead factual allegations to support Plaintiffs' general assertions of malice.

The Demurrer of Defendants Leung, Sirene, and Quintyne as to Count III: Tortious Interference with Business Expectancy is sustained with leave to amend to plead factual allegations to support the assertion that these Defendants were acting outside the scope of their employment.

The Demurrer of Defendants Leung, Sirene and Quintyne as to Count IV: Common Law Conspiracy is sustained with leave to amend to include facts to support Plaintiffs' conclusory allegation that the Defendants were acting outside the scope of their employment.

Defendant Minton-Package's Demurrer to Count II: Defamation and Defamation *Per Se* is sustained with leave to amend as to Plaintiff Robin

Tomlin to include facts establishing publication to third parties without the duty or authority to receive the communications and to support Plaintiffs' conclusory assertion of malice on the part of Defendant Minton-Package.

Minton-Package's Demurrer is sustained without leave to amend as to Plaintiffs Russell Tomlin and James Williams based on Plaintiffs' representations at oral argument.

Defendant Quinn's Demurrer as to Count II: Defamation and Defamation *Per Se* is sustained with leave to amend as to Plaintiff James Williams to plead exact words constituting the defamatory statements and to plead facts to support publication to third parties.

Defendant Quinn's Demurrer as to Count II: Defamation and Defamation *Per Se* is sustained with leave to amend as to Plaintiffs Robin Tomlin and Russell Tomlin to include factual allegations of defamatory statements made by Defendant Quinn.

Defendant Quinn's Demurrer as to Count III: Tortious Interference with Business Expectancy is sustained with leave to amend to plead factual allegations to support the assertion that Defendant Quinn was acting outside the scope of his employment.

Defendant Quinn's Demurrer as to Count IV: Common Law Conspiracy is sustained with leave to amend to include facts to support Plaintiffs' conclusory allegation that the Defendant was acting outside the scope of his employment.